UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 18-cr-258 - ABJ |
| v. : | |
| JACQUELINE D. BALL : | FILED |
| Defendant. : | JAN 31 2019 |
| : | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

**STATEMENT OF OFFENSE AND RELEVANT CONDUCT**

For purposes of Federal Rule of Criminal Procedure 11(b)(3) and to assist in the determination of the applicable Sentencing Guidelines, the parties stipulate to the following:

**Background**

1. The United States Securities and Exchange Commission (SEC) was an independent federal government agency whose mission was to protect investors, maintain fair, orderly, and efficient markets, and facilitate capital formation. The agency's headquarters was located in the District of Columbia.

2. On October 18, 2010, Defendant Jacqueline D. Ball was hired as a program management analyst in the SEC Office of Human Resources under Schedule A hiring authority, which allows for federal agencies in some circumstances to hire individuals with disabilities more quickly than would otherwise occur. Her duty station location was Washington, DC.

3. In 2012, Defendant Ball was permitted to telework three days per week from an approved alternate work site in the District of Columbia metropolitan area. On or about June 12, 2013, Defendant Ball was approved to telework full-time (five days per week) on a temporary basis. On or about August 14, 2013, Defendant Ball was approved to telework full-time (five days per week). The approvals granted to Defendant Ball to telework were based on Defendant Ball's

request for reasonable accommodation under the SEC's Disability Program.

## Defendant Ball's Residences

4. On November 21, 2012, Defendant Ball's husband purchased a residential property in Springfield, Virginia (the Springfield property). Defendant Ball and her husband lived at that property.

5. In or around August 2013, Defendant Ball and her husband began looking for property to purchase in the Charleston, South Carolina area.

6. In or about October 2013, the Springfield property was listed for sale. On November 14, 2013, the Springfield property was sold.

7. In or about December 2013, Defendant Ball began living at an apartment in Mount Pleasant, South Carolina.

8. On May 6, 2014, Defendant Ball and her husband purchased a property in Mount Pleasant, South Carolina. In January 2018, Defendant Ball and her husband sold the property.

## Standard Form 85-P

9. Standard Form 85-P (SF-85P), entitled "Questionnaire for Public Trust Positions," was a U.S. Government form used for certain background investigations and reinvestigations.

10. The instruction page for the SF-85P warned, "The United States Criminal Code (title 18, section 1001) provides that knowingly falsifying or concealing a material fact is a felony which may result in fines of up to $10,000, and/or 5 years imprisonment or both."

## Defendant Ball's Statements about Her Residence

11. On February 20, 2014, Defendant Ball electronically submitted and certified an SF-85P for an upgraded background reinvestigation. Defendant Ball signed the SF-85P below a



certification that "My statements on this form, and any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both. (See section 1001 of title 18, United States Code)."

12.     On the SF-85P, Defendant Ball falsely stated that she had lived in Arlington, Virginia from in or around November 2013 to the present when in fact she had been living in Mount Pleasant, South Carolina since at least in or around December 2013. The Arlington, Virginia address where Defendant Ball claimed to live was her mother's address.

13.     On March 18, 2014, Defendant Ball flew from Charleston, South Carolina to the Washington, DC area for an interview as part of her background investigation. The interview was conducted in Arlington, Virginia. On March 18, 2014, Defendant Ball flew back to Charleston.

14.     On June 20, 2014, Defendant Ball requested that she temporarily be permitted to telework from Charleston, South Carolina because she was pregnant and "may need to deliver at a high risk hospital in Charleston, South Carolina." She stated that approximately 12 weeks after the pregnancy, she would "head back up to our home in Arlington, VA."

15.     On June 24, 2014, wrote an e-mail to the Human Resources Director to discuss the possibility of an eventual move to the South Carolina area "when the time is ready even if for a few years" and her willingness to take a locality pay cut if the option were available.

16.     On July 21, 2015, Defendant Ball made a formal request to change her telecommuting work site to South Carolina by the end of 2015 as an accommodation for her disability.

17.     On January 5, 2016, Defendant Ball notified the Office of Human Resources that



"Employee Express," the automated payroll system, indicated that the state of Virginia was withholding taxes "even though my home address is reflecting correct [sic] as [street address] Germantown, Maryland."

18. On March 31, 2016, Defendant Ball submitted a request to change her alternate work station location to an address in Mount Pleasant, South Carolina where her mother lived. In conjunction with the request, Defendant Ball requested to temporarily work in South Carolina so that she could be close to her medical specialists when giving birth. Defendant Ball wrote, "I see this as a simple address change until I return home" and that she was "happy to change [her alternate work station address] back when [she] returned home."

19. On July 19, 2017, Defendant Ball's supervisor went to her approved telework location in Rockville, Maryland. Defendant Ball's step-grandmother lived at the location. Defendant Ball was not present. Defendant Ball later falsely told her supervisor that she worked from the Rockville, Maryland location "90% of the time."

20. On July 21, 2017, Defendant Ball voluntarily provided a statement to the SEC Office of Inspector General. Defendant Ball falsely stated that she had "primarily worked" from Mount Pleasant, South Carolina for "approximately the past year," when in fact she had been living in Mount Pleasant, South Carolina since in or around December 2013.

21. On September 29, 2017, Defendant Ball resigned from the SEC.

## Loss to the SEC

22. During the period that Defendant Ball was working for the SEC while living in South Carolina, she received locality pay based on her purported residence in the Baltimore-Washington, DC metropolitan area. For the pay period beginning on December 1, 2013, through



the pay period ending August 5, 2017, Defendant Ball received approximately $30,801.84 more in locality pay than she would have if her pay had been based on her actual residence in South Carolina.  The Government has no evidence indicating that Defendant Ball moved to South Carolina in order to take advantage of the locality pay.

BY: _____
Anthony Saler
Assistant United States Attorney

**Defendant's Acceptance**

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 1/31/19

Jacqueline D. Ball
Defendant

**Defense Counsel's Acknowledgment**

I have reviewed every part of this Statement of the Offense with my client. It accurately and completely sets forth the Statement of the Offense agreed to by the Defendant and the Office of the United States Attorney for the District of Columbia.

Date: 1/31/19

Jonathan Biran
Counsel for Defendant

